UNITED STATES, Appellee

v

DONALD W. SMITH, Private First Class,
U. S. Marine Corps, Appellant

8 USCMA 582, 25 CMR 86

No. 10,063

Decided January 10, 1958

*Major R. D. Humphreys,* USMC, argued the cause for Appellant, Accused.

*Major Charles R. Larouche,* USMC, argued the cause for Appellee, United States. With him on the brief was *Ensign Charles Docter,* USNR.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

Charged with failing to obey a regulation of the Recruit Training Command which inter alia prohibits the solicitation or acceptance of loans from recruits, the accused entered a plea of not guilty. At the trial the prosecution established that the accused was a coach on the Baker Line at the weapon range. On the morning of August 17, 1956, Private R. P. Sexton, a recruit, was on that line for firing. He and the accused engaged in a conversation. According to Sexton, the accused "said he had to

borrow some money and I said I could loan him ten dollars." It was also shown that Captain N. D. Fournier, the Officer in Charge of the firing range, "held school" for the coaches. His instructions dealt mostly with "coaching on the line," but the coaches were also informed "that they wouldn't have any kind of dealings involving transfer of property, in fact . . . they wouldn't even accept a light from them [the recruits]."

Testifying in his own behalf, the accused denied that he had asked for, or received, any money from Sexton. He maintained that he needed no money since he had almost $200 at the time and pay day was only six days away. He admitted that he had attended Captain Fournier's "school" for coaches. His testimony as to the content of the Captain's instruction best appears in the following quotation from his cross-examination by trial counsel:

"Q. You say that he mentioned not taking any cigarettes from them, not take any smokes, lights, asking them their home state or anything like that, just what pertains to the M-1 rifle, how to shoot, get them in their positions, tell them how to squeeze the trigger and things like that. In other words you should have no personal dealings with the man except as a coach?

A. That's right sir.

Q. Talk nothing to him but rifle marksmanship?

A. Yes sir.

Q. Did you hear Captain Fournier say anything about not having financial dealings with recruits?

A. Yes sir, in a sense, the Captain did say that. He said not to borrow any cigarettes. He even said not to have anything to do with them pertaining . . . except what pertains to their rifle and their shooting.

TC: Let's just stick to answering the questions, let's not go off on the deep end. Just answer them briefly.

Q. You did say that Captain Fournier said not to discuss your personal problems with these recruits, is that correct?

A. Yes sir."

Instructing the court members on the law applicable to the case, the president of the court said:

"The court is advised of the elements of the offense. Violation or failure to obey a lawful general order or regulation. The general order or regulation is lawful if it is not contrary to or forbidden by the constitution, the provisions of an act of congress, or the lawful order of a superior. A general order or regulation is one which is promulgated by the authority of the secretary of the department and applies generally to any armed force, or one promulgated by a commander which applies generally to his command. *As to the necessity of proving actual or constructive knowledge of the general order or regulation in certain cases that there was a certain general order or regulation in effect, that the accused violated or failed to obey the order or regulation, a general order or regulation is presumed to be lawful.* There are no lesser included offenses." [Emphasis supplied.]

The italicized part of the instruction contains some of the essential elements of the offense, but manifestly the meaning of the entire instruction is confused and uncertain. The board of review below attempted to import some clarity to the instruction by referring to paragraph 171a of the Manual for Courts-Martial, United States, 1951, which contains a discussion of the offense charged. The board of review reasoned that the "wording" of the instruction "is obviously that of paragraph 171a" and accordingly it added the "punctuation" of that paragraph to the instruction.

Certainly, grammatical nicety is not the standard by which the law tests an instruction. It is not the number or the position of the commas, semicolons, or periods that counts, but whether the instruction as a whole provides meaningful legal principles for the court-martial's consideration. United States v Noe, 7 USCMA 408, 22 CMR 198. In measuring an instruction by that standard, an appellate au-

thority cannot change the record. It cannot resort to other matter which was not made a part of the trial proceedings. Even if it is morally certain that an instruction is simply the result of an oversight, the appellate tribunal is bound to weigh the adequacy of the instruction as it was given at the trial, and as it appears in the record of trial. See United States v Marrufo, 7 USCMA 668, 23 CMR 132.

In our opinion, the instruction on the essential elements of the offense is so garbled and so vague that it is "tantamount to no instruction." United States v Gray, 6 USCMA 615, 618, 20 CMR 331. Nothing is gained by adding the punctuation inserted by the board of review.[1] The one sentence simply becomes a disconnected group of phrases, without any indication that the combination constitutes the elements of the offense. Nor is there any mention of knowledge of the regulation as a requirement of proof. United States v Arnovits, 3 USCMA 538, 13 CMR 94. The board of review held that the deficiency was cured by the admission of the accused that he attended the school conducted by Captain Fournier and heard his lecture on the duties of a coach. We have examined the accused's testimony with considerable care, but we are unable to find a single syllable of testimony regarding the regulation. The accused's testimony goes no further than admitting that Captain Fournier told the coaches to have no personal dealings with the recruits. The accused, however, was not charged with a violation of Captain Fournier's order, but with a violation of the Recruit Command regulation. His admission of knowledge of the former is not an admission of knowledge of the latter.[2]

The decision of the board of review is reversed and the findings of guilty and the sentence are set aside. A rehearing may be ordered.

Judges LATIMER and FERGUSON concur.

---

[1] It is worth noting that although the board of review inserted the punctuation of paragraph 171a of the Manual, it omitted a number of words, especially the word "Proof" before the reframed enumeration of the elements of the offense.

[2] The Government also relies upon a statement by defense counsel in closing argument to the effect that "The defense has admitted that the accused is aware of that order." Since this statement is contrary to the accused's plea of not guilty and to his testimony, it is actually prejudicial to the accused and would therefore require reversal of his conviction. United States v Walker, 3 USCMA 355, 12 CMR 111.